UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| OVER ACTIVE IMAGINATIONS INC., <br><br> Plaintiff, <br><br> v. <br><br> AMAZON.COM INC., <br><br> Defendant. | Case No. C23-1866-MLP <br><br> ORDER |

## I.   INTRODUCTION

This matter is before the Court on Defendant Amazon.com, Inc.'s ("Amazon" or "Defendant") Motion to Dismiss (dkt. # 20) the Second Amended Complaint (the "SAC" (dkt. # 17).)[1] Plaintiffs Mark Viniello and Over Active Imaginations, Inc. ("Over Active" or "Plaintiff," and together with Mr. Viniello, "Plaintiffs") initially filed this action on December 5, 2023. (Compl. (dkt. # 1).) Plaintiffs filed an amended complaint on January 24, 2024 (dkt. # 5), and the SAC on March 20, 2024 (dkt. # 17). The SAC alleges infringement of three design patents for mermaid-shaped sleeping bags. (SAC at ¶¶ 30-61.) Though Mr. Viniello was named as a plaintiff in the complaint and amended complaint, Over Active is the sole plaintiff named in

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 14.)

ORDER - 1

1  the SAC—the SAC states that Mr. Viniello was the inventor of the asserted design patents but
2  subsequently assigned them to Over Active. (*See* dkt. # 17 at ¶¶ 1-5.)

3        Defendant moved to dismiss the SAC on April 2, 2024 (dkt. # 20), to which Plaintiff filed
4  a Response (dkt. # 25), and Defendant filed a Reply (dkt. # 27). The Court heard oral argument
5  from the parties on June 5, 2024. (Dkt. # 29.) Having considered the parties' submissions, oral
6  argument, the balance of the record, and the governing law, the Court GRANTS Defendant's
7  Motion to Dismiss (dkt. # 20) as further explained below.

## II.  BACKGROUND

9        Plaintiff alleges three claims for patent infringement based on three design patents: Patent
10 No. D743,669 (the "'669 Patent" (SAC, Ex. 1)); Patent No. D751,792 (the "'792 Patent" (*id.*, Ex.
11 2)); and Patent No. D792,055 (the "'055 Patent" (*id.*, Ex. 3), and together with the '669 Patent
12 and the '792 Patent, the "Asserted Patents"). Each of the Asserted Patents encompasses a design
13 for mermaid-shaped sleeping bags, although the '055 Patent's design includes two embodiments.
14 (*Id.*, Exs. 1-3.)

15       Plaintiff alleges that 37 mermaid-shaped blankets and/or sleeping bags sold by Amazon
16 under 8 different brands (the "Accused Products") infringe one or more of its Asserted Patents.
17 (SAC at ¶¶ 27-28, Ex. 4.) The '669 Patent is asserted against 32 products, the '792 patent is
18 asserted against five products, and the '055 patent is asserted against one product. (*Id.*) The SAC
19 includes a "Claim Chart" (*id.*, Ex. 4) which shows the Asserted Patents next to each allegedly
20 infringing Accused Product. Each image of an Accused Product includes a functional hyperlink
21 to the Accused Product's Amazon sales webpage, which includes additional photographs of each
22 Accused Product. (*See, e.g., id.*, Ex. 4 at 5.)

ORDER - 2

### III. DISCUSSION

#### A. Legal Standard

When considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the nonmoving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). The court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Furthermore, the Court is generally bound by the facts and allegations contained within the four corners of the complaint. *See Shaver v. Operating Eng'rs Loc. 428 Pension Tr. Fund*, 332 F.3d 1198, 1201 (9th Cir. 2003).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 677-78. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Dismissal under Rule 12(b)(6) can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

B.     **Design Patent Infringement**

"Determining whether a design patent has been infringed is a two-part test: (1) the court first construes the claim to determine its meaning and scope; (2) the fact finder then compares the properly construed claim to the accused design." *Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1341 (Fed. Cir. 2020). Courts construe design patents as shown in their visual representations. *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1302 (Fed. Cir. 2010) ("Design patents are typically claimed as shown in drawings, and claim construction must be adapted to a pictorial setting."); *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) ("[T]he preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design."). "A district court therefore typically defines the scope of a design patent by reference to the figures illustrated in the patent rather than descriptive language." *PUMA SE v. Brooks Sports, Inc.*, 2024 WL 2161215, at *6 (W.D. Wash. May 14, 2024).

Courts then apply the "ordinary observer" test to determine whether an accused product infringes a patented design. *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 933 (Fed. Cir. 2014). Under that test, courts must ask whether "an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design." *Crocs*, 598 F.3d at 1303. "Differences, however, must be evaluated in the context of the claimed design as a whole, and not in the context of separate elements in isolation. Where . . . the claimed design includes several elements, the fact finder must apply the ordinary observer test by comparing similarities in overall designs, not similarities of ornamental features in isolation." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015) (citations omitted). "In some instances, the claimed design and the accused design will be sufficiently

distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear 'substantially the same' to the ordinary observer." *Egyptian Goddess*, 543 F.3d at 678. Accordingly, district courts may dismiss design patent cases at the pleadings stage where "infringement claims [are] facially implausible." *See Colida v. Nokia, Inc.*, 347 F. App'x 568, 569 (Fed. Cir. 2009); *see also Anderson*, 570 F. App'x 927 at 933-34 ("[Plaintiff's] complaint for design patent infringement cannot survive on merely conclusory allegations. Accordingly, we see no error in the court's dismissal for noninfringement.").

### C. The Asserted Patents and Accused Products

Here, the Court construes Plaintiff's Asserted Patents as shown in the drawings of the respective patents that are attached to the SAC. *See Crocs*, 598 F.3d at 1302. Detailed descriptions of the designs are not necessary, and the Court will instead use these figures as claim constructions for the Asserted Patents. *See Egyptian Goddess*, 543 F.3d at 679.

The '669 Patent (front and reverse sides):



(SAC, Ex. 1.)

ORDER - 5

The '792 Patent (front and reverse sides):



(SAC, Ex. 2.)

The '055 Patent (front and reverse sides of first and second embodiments):

 

Fig. 2  Fig. 3        Fig. 8  Fig. 9

(SAC, Ex. 3.)

ORDER - 6

1    Next, the Court applies the "ordinary observer" test to determine whether the Accused
2    Products' overall designs are substantially the same as the Asserted Patents. *See Ethicon Endo-*
3    *Surgery*, 796 F.3d at 1335; *Crocs*, 598 F.3d at 1303. After conducting a side-by-side comparison
4    of the Asserted Patents with the Accused Products using the above claim construction, Plaintiff's
5    Claim Chart, and additional images from the Accused Products' Amazon sales pages that were
6    hyperlinked in the SAC, the Court finds substantial differences in the overall designs of the
7    Asserted Patents and Accused Products. Furthermore, the Court finds that an ordinary observer
8    would not believe the Accused Products are the same as the Asserted Patents. Having concluded
9    that the overall designs are dissimilar, the Court next identifies some specific features that, when
10   viewed as a whole, factored into the analysis.

11   Fundamentally, the Accused Products differ from the Asserted Patents because they are
12   not traditional sleeping bags. The Accused Products are designed to cover the user's lower torso
13   and legs—they do not fully cover the user's arms and upper torso as a sleeping bag would. Thus,
14   the proportions and shapes of the Accused Products are dissimilar to the Asserted Patents. This
15   situation is analogous to *Silverman v. Leombruni*, where the district court dismissed a design
16   patent claim for shoes with camouflage soles. *See* 2016 WL 715735, at *2 (S.D.N.Y. Feb. 19,
17   2016). In *Silverman*, the Court observed that while both products were women's shoes with
18   camouflage-patterned soles, the accused product, an oxford shoe, was a different type of shoe
19   than the asserted patent, a high-heeled shoe. *Id.* at *3. Similarly, the Asserted Patents and
20   Accused Products are both shaped like mermaids, but they are different types of sleeping bags.

ORDER - 7



(Mot. at 14 (annotation in original).)[2]

Several of the design features in the Asserted Patents further illustrate this key difference. Each of the Asserted Patents has a scalloped "hood" at the top of the design for the user to rest their head. None of the Accused Products have this hood feature, or any scalloped design where the hood would be located. None of the Accused Products even extend past the user's shoulders.

---

[2] This image of the Accused Product, as presented in Defendant's Motion, was drawn from Amazon's product sales webpage, which was hyperlinked in Plaintiff's SAC. (*See* Claim Chart at 5.) Plaintiff did not object to Defendant's use of additional images of the Accused Products sourced from each product's respective Amazon sales page. (*See generally* Resp.) Because the sales pages are hyperlinked to the SAC and there is no dispute about the images' authenticity, the Court finds that the Accused Products' sales pages are incorporated by reference and can be considered in evaluating Defendant's Motion. *See Equal Emp. Opportunity Comm'n v. 98 Starr Rd. Operating Co., LLC*, 682 F. Supp. 3d 414, 420 (D. Vt. 2023) ("When a plaintiff includes a hyperlink in their complaint, courts have found the linked item is incorporated by reference therein.").

ORDER - 8

The '669 Patent, which is asserted against 32 products, has a chevroned "collar" feature between the hood and the body on the sleeping bag's front side. Only two of the Accused Products have collar features at the top of the sleeping bag, but they are polka-dotted instead of chevroned and wrap around both the front and back of the sleeping bag. Furthermore, both of these Accused Products also have collars at the design's bottom between the sleeping bag's body and the fluke. None of the Asserted Patents have this lower collar feature.



(Claim Chart at 10.)

The fluke shapes of the Accused Products vary considerably and differ from the Asserted Patents. None of the Accused Products have vertical seam lines in the middle of the fluke, as depicted in both the '669 Patent and '792 Patent. The bottom centers of the flukes on the Accused Products are not tapered to a point like the Asserted Patents—instead they are rounded. The flukes' shapes and proportions further vary among the Accused Products. Some products have fluke edges with multiple waves (*see* Claim Chart at 10), others have flukes that are triangular (*id.* at 11-18), two products have pleated flukes (*id.* at 8, 10), and another even has a four-pointed fluke (*see id.* at 7).



(Mot. at 15 (annotation in original).)

While the '669 Patent and some of the Accused Products use scale patterns in their designs, the scales are nevertheless dissimilar from one another. The scales on the '669 Patent have top edges and are only located on the front of the design, whereas the scale patterns on the Accused Products have overlapping edges and 30 of the 32 products accused of infringing the '669 Patent have scales on both sides. Instead of scales, the '669 Patent has baffling on its reverse side, but baffling is not present on any of the Accused Products.

(Mot. at 15 (annotation in original).)

ORDER - 10

The differing scale patterns are again analogous to the court's decision in *Silverman v. Leombruni*, where the district court found dissimilarities between the asserted patent and accused product's camouflage designs. 2016 WL 715735, at *2. In *Silverman*, the respective camouflage soles covered different portions of the shoes' soles—the patented design covered only the middle of the sole while the accused design covered the entire sole—and were composed of "notably distinct" camouflage patterns. *Id.* at *3 ("It cannot be, as Plaintiffs contend, that the designs are the same simply because they are both camouflage."). Similarly, the scale patterns here are dissimilar and cover different portions of the products. The designs are not the same simply because they are both mermaids.

The '792 Patent, which is asserted against five Accused Products, has a crosshatched tufting pattern on the front and baffling on the reverse. None of those five products have tufting similar to the '792 Patent's design—indeed none of the Accused Products have tufting at all.




ORDER - 11

(SAC, Ex. 2; Claim Chart at 9-10.)[3]

As with the '669 Patent, the baffling design on the reverse side of the '792 Patent is not present on any of the Accused Products. As discussed above, the shape of the '792 Patent is different than that of the Accused Product—the proportions are different, the flukes are not the same shape, and the Accused Product lacks a hood.

The '055 Patent, which is asserted against only one product, is the only Asserted Patent design to have a scale pattern on both sides of the design. However, even the scale pattern in the '055 Patent is readily distinguishable because the patent explicitly incorporates stitching into the scale pattern of the claimed design.[4] Scale stitching is absent from the Accused Product.

---

[3] This image of the Accused Product is drawn from Amazon's product sales page, available at: https://www.amazon.com/Catalonia-Mermaid-Mermaids-Sleeping-Children/dp/B075Q64KVF?ref_=ast_sto_dp&th=1 (last accessed June 10, 2024). This sales page was hyperlinked to Plaintiff's SAC. *See* Claim Chart at 9-10.

[4] Typically, dotted lines in design patent illustrations indicate that a particular shape or feature is not included in the claimed design. *See Catalyst Lifestyle Ltd. v. Elago Co.*, 2023 WL 6168249, at *4 (S.D. Cal. Sept. 21, 2023). Here, however, the '055 Patent explicitly states that "[t]he evenly spaced broken lines illustrate stitching on the mermaid sleeping bag and form part of the claimed design." (SAC, Ex. 3.)

ORDER - 12



Fig. 2

(SAC, Ex. 3; Claim Chart at 18-19.)[5]

There are further differences in the designs that effect the general appearance. Again, the proportions of the designs are different, and the Accused Product lacks a scalloped hood or a collar at the top of the design. Furthermore, the fluke of the '055 Patent is an entirely different shape than that of the Accused Product—the crescent-shaped fluke of the '055 Patent's second embodiment is likewise dissimilar.

In opposition, Plaintiff argues that the Court should not dismiss its patent infringement claims at the pleading stage. (Resp. at 3.) However, the authority cited by Plaintiff is from a utility patent case and Plaintiff does not explain how this ruling relates to its design patent claims. Nor does Plaintiff address the overwhelming authority granting and affirming dismissals

---

[5] This image of the Accused Product is drawn from Amazon's product sales page, available at: https://www.amazon.com/dp/B0CF9Q3VLD?tag=citizensidecom-20&linkCode=osi&th=1 (last accessed June 10, 2024). This sales page was hyperlinked to Plaintiff's SAC. *See* Claim Chart at 18-19.

ORDER - 13

of design patent infringement cases at the pleadings stage. *See, e.g.*, *Anderson*, 570 F. App'x 927 at 933-34; *Colida*, 347 F. App'x at 569; *Silverman*, 2016 WL 715735 at *1; *SCG Characters LLC v. Telebrands Corp.*, 2015 WL 4624200, at *6 (C.D. Cal. Aug. 3, 2015). Next, Plaintiff cites a declaration from Mr. Viniello, the Asserted Patents' inventor, who states that acquaintances have confused the Asserted Patents with products sold by various retailers, including Amazon. (Dkt. # 26.) Mr. Viniello further states that based on his opinion, the Accused Products are "plainly similar" to the Asserted Patents. (*Id.*) The declaration is not within the four corners of the SAC and will not be considered. Furthermore, the declaration itself states legal conclusions that, even if they were part of the SAC, would not be meaningful to the Court's disposition. Finally, Plaintiff argues, without explanation or analysis, that "the designs are plainly similar." (Resp. at 4-5.) Having conducted a side-by-side comparison of the designs and found that the Accused Products do not infringe the Asserted Patents as a matter of law, this argument is without merit.

### D. Leave to Amend

Plaintiff argues that if the Court grants Defendant's Motion, Plaintiff should be granted leave to amend "to show various products infringing 1 or more of the Asserted Patents . . . if the Court finds it necessary to show a different example, Plaintiff should be allowed to do so." (Resp. at 5.) Plaintiff has already amended twice (*see* dkt. ## 1, 5, 17) and Plaintiff's Response does not identify what additional facts would cure the SAC's deficiencies. (*See* Resp. at 5.) Having found as a matter of law that the Accused Products do not infringe the Asserted Patents, the Court finds that further amendment would be futile. *See, e.g.*, *Glover v. Cohen*, 2022 WL 5082130, at *4 (Fed. Cir. Oct. 5, 2022) (rejecting opportunity to amend where "amendment would be futile"); *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1052 (9th Cir. 2008) ("Appellants

fail to state what additional facts they would plead if given leave to amend . . . . Accordingly, amendment would be futile."). Therefore, the SAC is dismissed without leave to amend.

### IV.   CONCLUSION

For the foregoing reasons, the Court orders:

(1) Defendant's Motion to Dismiss (dkt. # 20) is GRANTED.

(2) Plaintiff's SAC is DISMISSED without leave to amend.

(3) This action is DISMISSED with prejudice.

(4) The Clerk is directed to send copies of this order to the parties.

Dated this 11th day of June, 2024.

MICHELLE L. PETERSON
United States Magistrate Judge